We'll call our next case, Baloga v. Pittston Area School District in June Sereno. Baloga v. Pittston Area School District Ms. Pollock? Thank you, Your Honor. Good morning. May it please the Court, my name is Cynthia Pollock and I represent the appellant Michael Baloga. I reserve three minutes for rebuttal. Granted. This case, based on the recent court decision by the Circuit of Pillarde, has made this case even clearer for this Court to decide to reverse because of the fact that the district court erred by using the public concern element for an association claim. So help us with that analogy because you've made that argument in your 28-day submission, but Pillarde was expressly distinguishing between speech, union-related speech, and mere membership. And in the complaint that we have here, even though in the association claim, it's alleging retaliation for being associated with the union and complaining about the Martin Luther Holiday situation for union members. Do we have an association claim here that really is limited to the issue of membership, association, and that is not intertwined with the speech claim? Yes, because of the fact that he had filed, supported the filing of a grievance. Only a union member, a vice president or president, could file such a grievance for an employee. So it is his association with the union that is distinguishable from his speech related to the issue because of the fact that grievance can only be filed by a union president, vice president. A normal employee has to ask the union before they can file a grievance. In this case, Mr. Beloga decided with the president, Tom Rome, to file the grievance, and the defendant admitted that it was the grievance that was the catalyst for the transfer. He admitted it to Beloga that same day that he was transferred on January 22, 2016, that it was the grievance that was the issue, not related to any speech, was the fact that he... But you have the union related speech related to a union right that they claim. It seems the essence of what you have here is him speaking out because he had certain union rights, and it's the speech that's the crux here of the matter, not that they're members of the union. Otherwise, what you're arguing here is that every time there's a union dispute here, it's a federal case, if you say it's a union case. Well, thanks to this circuit in Bilardi, union association claims are protected. And so the minute a union decides to make an action for a global grievance, this wasn't concerning just Mr. Beloga. It was a global grievance for all union members. Yeah, but at Bilardi, it wasn't the speech that was the crux of the matter and why there was retaliation. Everyone there said that they were retaliating against him because he's very active in the union and he supports union members, and he's just a union man. He's not a company man. Here you have speech, and not the fact that he's a member of the union, that's the crux of the matter, but he's talking up about his rights to have Martin Luther King Day up and so forth. So why is this so much a matter of union? Otherwise, what you're doing is federalizing every union dispute, and this is just a grievance that you have here, not a federal case. And I would disagree with Your Honor because the fact only the union can file a grievance, and the defendant admitted that that is why he transferred the plaintiff because of the fact he filed a grievance, which goes back to him being vice president of the union. That's the only type of people who can actually file a grievance, and it wouldn't be federalizing every grievance that's filed. It's any global grievance that's filed by the union has protection because of the fact that it was the fact that he was a union person that caused his demise. Counsel, is the point you're asking us to draw that, as to your association claim, the speech in question is not his speech. It's the union speech, and he's being retaliated against, allegedly, for his association with the union for the grievance that it filed. Exactly. So we don't have to, under that theory, we don't have to agree that the subject matter of the complaint or the grievance, that is getting Martin Luther King Day off, that that involves a matter of public concern in order to find that there's a viable association claim. Correct. And if we accepted an approach like that, would there be any limit to the nature of the claims that a union, would it matter what the nature was of a claim that the union filed, if the allegation was that a member of the union or leadership of the union was being retaliated against for a grievance that the union filed? It would only be the leadership, and those people who are filing those claims on behalf of all workers, those are the people who have rights, not the individual that may be harmed. It's the leadership from acting out in supporting the rights of workers that's being retaliated against because of that association with the union. So it would only be covering claims when the leadership is being harmed, because if the leadership can't stand up and support its workers, what's a union's use? It's no longer useful. And in this case, the district agreed to have the union settle all the grievances and problems associated with the workforce, so there should be no issue. In light of poverty and his association with the union, doesn't his speech have to be a matter of public concern? Not for an association claim, but if you look at the First Amendment without looking at the association, then it has to be on a public concern. And how was he speaking on a matter of public concern? Well, I would say he was leadership, his association, so we don't even have to get to the First Amendment straight public concern issue because of the fact that we have an association claim. But even if you look at the First Amendment, the actual speech of the grievance was a matter of public concern. This court in Swineford said public employee criticism of office internal operations is a matter of public concern. And in GovHan, the United States Supreme Court said criticism school district practices and policies are matters of public concern. So the fact that the director- I think you were speaking down, and maybe I just didn't hear you. How was his association with the union? How did that reflect the speech of a matter of public concern? Because of the fact he was a leadership asserting a right for all workers. So what did he say that was a matter of public concern? And that's why it goes back to his association claim. But if you don't even analyze it under the association aspect of it, he still should have been allowed to get to a jury because if you assess it as a First Amendment straight case, the, you know, criticizing and complaining about your manager that you're taking off something that the workers had for 26 years, unequal treatment since school teachers get the day off and maintenance workers don't. It's like a very narrow, confined issue. How is this a matter of great concern for the public in general? Certainly the school district employees would be interested in this unfair treatment. And maintenance workers aren't viewed any less than school teachers. They have the same rights. So certainly the unequal treatment. But we don't even have to go there because we can look strictly at his association claim. You have briefed and asked us to address on appeal the speech claim as well, right? I have focused on that. But my briefing focuses on the association claim. You address both. But you're suggesting to us now that we don't need to consider the speech claim. So are you withdrawing that aspect of your appeal and asking us to focus on the association claim only? I'm asking this court to focus on the association claim. Well, OK. So are you you're waiving any claim if it were, in fact, a speech claim? Well, I'm not waiving it because it is present. But I'm asserting, first and foremost. OK. So your backup position is even if it is a speech claim, it has public concern. My alternative argument. Why would the citizens in the community be concerned of what is an everyday union dispute, actually? Grievance that these go forward left and right. Every dispute between an employee and the union is the public is not concerned with that. And I would disagree with you. I think the fact that people are being treated differently is a concern to the public. Well, I mean, you've been in union disputes, obviously. This is a quintessential union dispute where a worker says, I have rights under my contract. And I want to dispute this with the employer. That's that's the everyday union dispute. And I would disagree because of the fact that this was a Martin Luther King holiday that they had off for 26 years. And why are the maintenance workers being treated differently than the public school teachers? There's no reason to treat people differently, especially on a day that we celebrate civil rights. And you feel as if the community would have been very concerned about this because it was so it was that dealt with Martin Luther King. Yes, it's we're celebrating equal rights. And here the school district is the maintenance director is denying people equal rights. Well, suppose it suppose it had been that they denied the right to take July 4th off or Memorial Day off or Columbus Day or whatever. You know, Independence Day is holidays. Would that also be of community concern? I believe it would be of community concern because it's unequal treatment. I know. But that's what that's what the that's what union grievances are all about. You claim you have that dealt properly under the union collective bargaining agreement and that you're entitled to equal pay payment for whatever your job is and so forth. And I would say because this was a global grievance for all full time maintenance workers, it made a difference. But let me ask you this is interesting question. It's not until we got the party down here that they made this distinction between. Association and speech claims. Correct. OK. So even if you're correct about your association claim, let alone your speech. Aren't they isn't aren't they entitled to immunity? Yes, they there was no law. Matter of fact, the majority of the states, I think, went the other way. They said that you had the Supreme Court has not gone near this. So that we're dealing with a situation here, whatever they did. Aren't they entitled to immunity? Because there was there was no guidance here. Well, the clearly established case law that would only apply to the individual. It would not apply to the school district. The school. Well, OK. So it applied to what's his name? Serena. Serena. If it was an individual and you have no proof that I recall reading your brief that this ever went to a level of a supervisor or so that there will be a manel situation here. And I have cited Bacchus in my brief, which specifically had this type of situation. Someone who was in control of the work schedules and he was held to be a policymaker. Therefore, let's say Serena was a policymaker. And so he would be entitled to immunity because there's a law out there. Well, I would assert that this circuit back in 1987, the case said plainly efforts of public employees to associate together for the purpose of collective bargaining. Involve associational interests, which the first amendment protects from hostile state action. So I would always go back that there was clearly established law. And also in Higgins versus Montgomery, which is from the eastern district of Pennsylvania. How do you get over Parani itself said were this is the law now, even though it was not established in New Jersey in the Third Circuit? I get over it because of the fact even say I would lose unqualified immunity, say the judge rules against me. I would still have the school district held responsible for. Well, what proof that they that they were involved in this routine everyday labor dispute? There's nothing that shows it went up to a higher level for adjudication. Well, number one, the superintendent knew about it and didn't stop it. So that would be acquit acquiescence. He was there. He made no. There was no. As far as I know, the briefing, I'm not I'm sorry. I didn't. I reviewed this within the last couple of days. I don't think it ever went beyond Serena. That's right. Serena. As to what they did here, they never went up to a higher level. Let's put it that way. Policymaker, what his actions did would establish liability on behalf of the school district because he's a policymaker. That's one of the tests. And if there would be any issue there, it would be an issue for the jury to decide. Was he a policymaker or not? Thank you. Counsel, do I understand your your on your qualified immunity point as you were talking about the right of association being clearly established? Is your point there that for qualified immunity on the clearly established prong, we look to whether the right at issue was established. And we have with polarity, adding that if it's this particular kind of right, you don't need to make an independent showing as to the subject matter involving public concern. But that the right itself is is one that has been clearly established. Correct. Could you could you also briefly address the question of you make the argument that that the action here was sufficient, sufficiently retaliatory to deter a person of ordinary firmness from exercising their constitutional rights. But what's at issue, it seems undisputed, did not involve a change in salary, did not involve a even a change in location from what was kind of cyclical transfers that that Mr. So so what was it that was so materially different about his terms of employment? And the wonders wonderful state of the 1983 act is you don't have to do a benefit change, a salary change. Just the little of not holding a birthday party in retaliation for harming someone is sufficient to establish liability. So there is no we don't have to worry about discrimination when we have to show, you know, a change in pay, a change in salary, some distinct change. But clearly here he I said the case in my brief exactly this. Someone was transferred from a different school district and it affected their family and affected. In this case, my client has eight children. He's home helps homeschool his children. He's farther away. He was reduced to being just a mop in a room. There was no work for him because he normally was not down there. And it was only the fields that were tended to at that area at the high school. There was more activities to do. There was nothing at the primary center. What was the question? Because I had had the same thought, which is how could it be retaliatory if he was going to have to go back anyway? It was retaliation. He has every year he has a certain period of time at the high school, but he has to go back to the other school. I think probably in elementary school. In this case, he just went back three weeks earlier. He goes in March. He doesn't go in January. So this was clear retaliatory because it was same-day transfer when he just got to the high school. He also had new hires that were taken over at the high school, three new hires. So they didn't need him anymore. So why isn't that an administrative transfer? We're going to send you back three weeks earlier. You're saying that was retaliation. But they had a reasonable basis for making. Did they not have a reasonable basis? And we would argue no because of the fact that there was my client testify he still had work to do. And secondly, the defendant, Serino, admitted, you know, you should never have filed that grievance. That gets us that same-day suggestive retaliatory act. It was 1-22-2016, the same day he was transferred when he just got there. It was an unusual move. There was work there for him to do. There was no work for him to do at the primary center. So clearly it was retaliatory. Okay? Thank you. May it please the Court, Your Honor. My name is Thomas Speck and I represent the school district and Jim Serino in this matter. And I think I'm going to jump to the Polarity case since this Court asked us to file a supplemental brief on that issue and seemed to be interested in it in questioning my opponent. The difference between this case and Polarity is Polarity was a pure association claim, merely because of the person's union membership they were retaliated against. And just looking at some of the facts of Polarity, the supervisor repeatedly stymied attempts of Polarity to become the chief of police. He testified that other officers told him that the supervisor repeatedly made statements reflecting negatively on his union activity, that the supervisor told another person that Polarity would never become the chief because of his union affiliation and being a thorn in my side for all these years. There's no evidence on this record of anything similar in this case. There's no evidence of retaliation based on union affiliation. That would be speculative and conjecture. There's only, I think, conclusions in the complaint that support that. We can look to specific allegations in the complaint, but just as an abstract matter, would you agree that if the nature of the claim was that an employer had taken retaliatory action against a leader of a union after the union filed a grievance on behalf of a particular employee who was, say, a thorn in the side to the employer, the union had filed this grievance, and the allegation is that as a result, this leader of the union has now been terminated. Would you agree that that is an association claim? It may be an association claim, but I would say that, like our case, it would be an association claim where the association is very intertwined with the speech. What does it matter what the content of the speech is in that circumstance? In the circumstance that you just talked about. Isn't the nature of the First Amendment claim there one that relates to the exercise of the right to associate with members of the union? I think it has to do with more of the conduct of grieving, grieving a situation or grieving against the administration about what's going on. And there are cases in this circuit. I think the Miller case is one where they talk about mundane employment grievances are not constitutionally protected speech or conduct. A grievance relating to stressful conditions in the workplace, I think, in the Miller case. Monroe was the other case. A grievance related to stressful conditions in the workplace was the Miller case wasn't constitutionally protected conduct. But if the nature of the claim is not is not tied to the subject matter of the grievance. The nature of the claim is simply that by virtue of being a leader of the union that filed a grievance of whatever nature that the leader has been retaliated against. Isn't that a pure association claim? I don't think so. According to Polari, I think Polari talks about just being affiliated with the union. And that's what the specific facts of Polari talked about was that it was specifically because of his union affiliation. He was being retaliated against. Not anything. I believe it's a it's not anything about whether he is evincing hostilities solely because of his union membership. It's not because of his advocacy on a particular issue, which is what we have here and was what we would have in your case. That's a pure association claim is solely union affiliation. Polari said it's not solely union affiliation when there. What about the statement to him that you should have spoken to me before you filed that grievance? Doesn't that imply or strongly suggest that the action was retaliatory for his union membership? Well, I think that there that again would be speculative. It's it and would only go to the causation aspect of it, which we have with the hiring of the three persons to take his spot. He was always most most of the year he was at the primary center. As soon as we move to those issues, we're back in the world of tribal questions. Right. But we don't get we don't get to those issues. So the threshold issue of whether there is an association claim that is going to point to his question, whether he's being retaliated against because of something that the union did and the fact that he is associated with the union. When we have Serino saying, you should never have filed that grievance until you talk to me. And Bang saying, because you filed a grievance on Martin Luther King Day. Now you have to work full days on snow days. Mr. Belogo was not the one who filed the grievance. Someone else did on behalf of the union. So it doesn't mean you in that situation necessarily mean you in the representative capacity as vice president of the union. I don't I don't think so. I think this was this was a person who had come to him prior to the filing of the grievance and said, you know, the guys are upset that they don't have Martin Luther King Day off their their their their morale is down there. And am I going to have to take a day off now? You know, I have these errands to do. I mean, that's what I think he meant by you in that situation. And regardless, when you again, when we're getting into advocacy again, that's where you're you're finding the intertwining of speech and association, which this court has held previously in this sanguine case. I hope I'm pronouncing that right. You're applying the public concern test to those type of claims here. But he filed this on behalf of all maintenance workers, not only on his own behalf. Correct. He didn't file it, but somebody else filed it. But his his grievance and his complaint was solely relating to his hours, his days off. And regardless, I again, what I'm what I'm trying. My reading of polarity is that where you're talking about advocacy, that's where we're getting the intertwining of speech and association. And that's where you're subject to the public concern test. Polarity seems, based on my reading of it, to to be solely limited to if you're retaliating against solely for your union membership, your union affiliation, which is, again, there are specific statements in that case talking about that. He is being retaliated against solely because he is a member of a union. OK, you know, both ways. To me, this is a speech case. But what why don't you can't say also, because I don't like the speech and I don't like your union. You may have a case where that might be might might happen, but not in this case, not on this record. There's no evidence supporting any retaliation based solely on union affiliation on this record. And, you know, this this record is is based on a grievance speech intertwined with with that. Your position is that which I mentioned that you said this is a union grievance. What's all the shooting about here? Well, how does it get to be anything more than it? It's every grievance. You know, there's no such thing as speech anymore because it's old. It's always a union grievance. Now it's no more a speech. I mean, I'm going to run with this. I could speculate on cases where it might not be. I really if you want me to. But I I'm just looking at the facts of this case. I don't think we're getting there at all. Yeah. But your position has no bounds. That's the problem. Maybe if it was if it was if it was an issue of public concern, you know. No, no. Without getting into a public your position is look, we have a speech. They hear pure and simple. It's and there's no public concern here. No one in the community is going to get in an uproar over this thing. I know this position is you're doing this because of a union union person that filed this on behalf or had it filed. But for all the union members, it's the union. That's it. And your position as well as is a typical everyday you didn't grievance. Let's see. Take it. See if there's a violation of the collective bargaining agreement here. And by their allegations and by the record, everything shows that the the association claim is intertwined with. Yeah. But see that with that theory, you're just making little making little out of out of everything. Well, I think you have to look at the context of each case that comes before you in this type of matter. Other than if you have a pure association case like in polarity, you know, where the guy is saying, you know, I don't like him because he's a member of the union and I'm going to get rid of him. We have nothing like that here on the record. You know, I just see the association claim, though. But also there was retaliatory action. Apparently, at least he alleges. So I think he was sent back three, three or four weeks early. An event that had never happened before to him. And so that when you put together the, you know, his his grievance together with the fact that he was sent back three or four weeks early, it seems to be in retaliation for his speaking. But I don't think we even get to that second part unless, you know, there is a public concern aspect of it to show that it's constitutionally protected. Right. So your view is that he was not speaking out in a matter of public concern. Yeah, that's one of my one of our arguments. You agree that that wouldn't affect a pure association claim. Right. It wouldn't. We argue in our brief why why a public concern should apply to all association claims. You realize the court came down with polarity after we filed our brief. You know, we would adopt the reasoning of the Cobb case from the Second Circuit, which talks about there shouldn't be gradation and stratification among First Amendment rights and tests for First Amendment rights. And that Connick was based on association cases yet still apply to public. Let's take the worst case that is that it is an association claim. Let's say we decide that. What is your position as to immunity here? The clearly, you know, the law was in flux before this. So Serino, if I'm pronouncing his name right. Did it go any higher? Is there a Bedell situation here? Did it go for a determination by anyone beyond him? No. In this record, is there any. Policymakers are superintendents and school boards, and there's no evidence that any of them had had notice of what was going on here or was involved in the decision. And with regard to the qualified immunity of Serino, there has to be a robust consensus of Third Circuit case law. And to my knowledge, the only case that has ever talked about not having a public concern element for an association claim is polarity, which is a single case and wasn't even in effect when all this was going on. So your backup defense is that even if that. Yes. You're entitled to a beauty. How does qualified immunity. And it sounds like you're arguing that what we look for as to what's clearly established is not the right at issue, but we have to look to whether there are new developments in what type of evidence or what quality of evidence. It has to be a more specific inquiry with regard to the clearly established prong. It has to be. I think the way we talk about it in the brief is, you know, there's never been a case where, you know, speech about a day off or a grievance about a holiday, you know, was found to be constitutionally protected speech for purposes of association right or speech right. And that goes to the right. If we were talking about speech claim, but association claim, is there is there really a dispute about whether it was clearly established before polarity, whether an employer could take retaliatory action against a leader of a union simply because of something the union was doing or saying or organizing? I think that it wouldn't have been clearly established. No, I don't. Not in this situation, which is, I think, what you have to look for. How did polarity add in any way to whether that right was was clearly established? Well, I think they've added to it and that they say that if you if you're if you're retaliated against solely based on your union membership, that's that now is is a is a at least there is a single case and it's clearly established in the Third Circuit that if you're discriminated against, retaliated against based on solely on your union membership, that would be clearly established. But it's not a situation like this that you couldn't. Was there a violation of civil rights to prior to that, to discriminate against someone that's a member of the union, but not in not in this situation is is it? I think it has to be more specific than that. I think everyone has obviously everyone has a right to freedom of association. Everyone has a right to freedom of speech. It has to be more specific when you're looking at the clearly established prong of the of the qualified immunity test. Well, the only thing party cleared up was that with association claims, you don't have to have a public prong to it. But with the association, the the the you don't need the public. But so what your position is, it's it's OK to discriminate against people if they're just an association and they're punished because you're a member of that union. I wouldn't put it that way. I would say that he would have qualified immunity because in this situation, because the law was not clearly established in this specific situation where someone grieved about not getting a day off and they were transferred, you know, from their position, you know, and where the speech is arguably intertwined with the association claim. There is no clearly established law. Could you address your time is gone, but to the extent we have additional questions for you, we'll entertain them and appreciate you doing the same. Sure. You have argued that he was transferred because he brought down employee morale and that that that was sufficiently disruptive to justify the action, even if it were otherwise protected. What's your authority that bringing down morale is sufficiently? Well, I think it's more of that. It's they have the right to run their workplace in as efficient a manner as as they deem necessary. And they deemed it necessary that he go to back to the primary center at that point due to lack of work, due to the fact that three new people were coming on the Monday after he was transferred. Well, those go to the question of motivation, which is in dispute. Well, there's it goes to whether or not they they're there. His they had a right for treating him different than a member of the general public based on their workplace and how they were supposed to be, how they wanted to delegate personnel and responsibilities in their workplace. That would to me would be the the efficiency. That's true of every employer, but you can't do it for unlawful reasons. Right. You wouldn't be able to do it for unlawful reasons. What you put forward that would you suggest differentiates this is that he was bringing down morale. So what what what is the authority that bringing down morale is would be sufficient to outweigh someone's exercise of constitutional rights? I think I don't have a specific case that talks about that. Again, they're the only case that I that I have are the cases that talk about. You have the right to govern your workplace efficiently. And if someone is causing problems in the workplace, I think the Monroe case was a different situation. It was a teacher blogging about her students and they fired her because of that. They had a right to govern their workplace. They didn't want this this type of controversy in the workplace. And this court upheld her dismissal. That would be the analogous type situations that I would I think that I've cited in the brief to talk about maintaining your workplace and proper allocation of personnel efficiency, not wanting someone to be affecting other workers around them in a negative way so that work gets done. What I read in the record was that the basis for his transfer was that the school system had gotten three new hires. And and also that he was needed back at the elementary school. Now, now you're saying something. Well, I think there's a combination. You're saying that he was bringing down morale. That that's one of the reasons there's there. They they they talked about I think in Serena was talking to him, said you're bringing down morale. And he was going to take him away from the high school because of that. But also they were getting three new workers. And also his normal job was at the primary center, which is where he was transferred to most of the year. In 10, 10 months or so of the year, that's where he worked. But there doesn't seem to be the basis for transferring him earlier is, you say, various reasons. And it's because I think it was a combination. They were not working there yet. Not yet. I think they had or there was already a grievance that had been filed regarding hiring those three workers. And they were coming on Monday after. But the biggest reason was bringing down morale. I think it was I think it's a combination of all three of everything we've discussed. What in the record substantiates bringing down morale beyond Serena's testimony? I think it's, you know, I think it's just common. You know, you're looking at someone who's, you know, complaining that they're not getting a day off. I think just common sense, you know, from a reasonable inference from that is that it's going to bring down morale. People around them. If you have someone complaining in the workplace. That was the complaint that the union filed as well. Right. I'm not sure. I'm not sure if I'm understanding your question. Wasn't the nature of the grievance that they were not getting Martin Luther King Day off? Yes. And you're you're you're you're positing that that the the complaining about not getting Martin Luther King Day off, which was the subject matter of the grievance itself would bring down morale. How then do we differentiate, again, that retaliation against him for anything he was saying or doing versus retaliation against him for what the union was doing? I'm I'm not sure. I think, again, you know, these are all questions that I don't think you need to even get to, because I don't think it's it's not constitutionally protected speech or conduct. It's not a constitutionally protected association claim. So I don't think you need to get to that. But, I mean, that's where these these these association and speech claim that that Mr. Beloga is making are so intertwined. Again, it's it's another reason to apply the public concern element to it. And an employee grievance, regardless of whether it's on behalf of several people or on behalf of himself, for not getting a day off is not a matter of public concern. OK. OK. Thank you. Thank you. It was clearly established that union leaders had protection under the Constitution that you couldn't take state action against them for engaging in union activities. So it was clearly established that the district court didn't even get to that analysis because of the fact he found with the public concern element, the disruption aspect of it, that wouldn't be applied for an association claim because it wouldn't be one of the elements that has to be met. As the polarity case told us, it just has to be casually connected to the retaliatory act. Ordinary would ordinary deter a normal person being transferred right when you get to the high school and then going to a school that you have no work to do. And everyone noticing that would deter others. And also it deterred my client who would not speak out after that occurred to him. Is there such a thing as de minimis retaliatory action in the sense that he was going to go back anyway? It's just a matter of maybe three or four weeks. Normal yearly routine is to work at a high school during a certain period and then go back to the elementary school for a certain period. This time around he was sent back a little earlier. By a little I mean it was about three weeks. Yeah, and I would say that's not de minimis and he has yet to go back to the high school. They have continued to retaliatory punish him and have never allowed him to go to the high school again after that situation. So they continue to harm him and punish him for his union leadership activities. But they've put it to the record the reason for that being the hiring of employees at the high school who now perform those services that they used to transfer folks over to perform. There's nothing in the record that establishes that. So that would be just speculation on the defendant's side that that's why he's never been put back there. There's testimony to that effect, isn't there? I don't believe there's testimony that the reason why he's never been put back there since he was doing that for many, many years. The reason for that is because of the fact that the new hires. There's no evidence in the record because of the fact it's occurred since the depositions and whatnot. He's never been placed back in the position he once was. And that's clearly not de minimis and should be recognized. And again, not holding a birthday party can be grounds for retaliatory acts. So certainly being transferred three months before your time can be retaliatory. I thought it was three weeks, not three months. Well, it was January, but he normally goes back in the beginning of March into February. So it was much more time. Okay. Okay. If there's no more questions, thank you. Thank you, Your Honors. Thank you. Thanks to both counsels for very helpful arguments. We'll take the case under advisement.